## Vanderpool, et al. v. Stewart, et al.

## Stewart, et al. v. Vanderpool, et al.

(Decided January 12, 1926.)

### Appeals from Floyd Circuit Court.

1. Judgment—Second Judgment Setting Aside First, and Third Setting Aside Second, Leaves First Judgment in Force.—Where second judgment set aside first judgment, and a third judgment set

aside the second, the effect is to leave the first judgment in force.

2. Vendor and Purchaser—Vendor Estopped from Claiming Any Greater Lien as Against Subsequent Purchasers than Shown by His Title Bond.—A title bond delivered to purchaser in possession, reciting a paid consideration excepting certain amount, is notice of extent of lien retained by vendor, who is estopped from claiming any greater lien as against subsequent vendees from original purchaser, and, on payment of amount of lien, vendees are liable only on their purchase-money notes.

3. Estoppel—Funds Held to be Applied to Satisfy Original Vendor's Lien, Limited to Amount Shown Due by Title Bond.—Where vendor sold lands under title bond, reciting paid consideration excepting certain amount, and purchaser, reserving timber rights, resold lands to vendees relying on title bond, funds arising from sale of reserved timber and balance due on purchase price by vendees should be applied to liquidate original vendor's lien, which is limited to amount shown to be due in title bond, and loss, if any, must be borne by vendor under rule that, if one of two innocent parties must suffer, it must be borne by one whose negligence produces the injury.

4. Vendor and Purchaser—Judgment of Sale to Enforce Original Vendor's Lien Erroneous, where Subsequent Vendees Not Made Parties.—In action against purchaser to enforce vendor's lien, a judgment ordering sale of lands without making various vendees from original purchaser, who were in possession, parties thereto, is erroneous.

5. Appeal and Error—Correct Judgment will Not be Set Aside, though Entered by Mistake.—Where a correct judgment was set aside, and an erroneous one entered, by trial court on appeal, the correct judgment will not be set aside and a similar one re-entered, even if it was entered through mistake.

6. Judgment—Trial Judge should Read Decree or have it Done by Opposing Counsel and Direct its Entry by a Notation.—To prevent error, a trial judge should either peruse a decree drawn by counsel or have it done by opposing counsel, and then direct its entry by a notation thereon signed by himself.

A. B. COMBS, B. F. COMBS and C. B. WHEELER for appellants.

A. J. MAY, J. D. HARKINS and B. M. JAMES for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing on the first appeal and affirming on the second appeal.

These two appeals have been consolidated and considered together and may be best understood by a recitation of facts in chronological order.

Prior to September, 1920, G. B. Vaughn, a resident of Johnson county, and H. E. Stewart, a resident of

Greenup county, hereafter called plaintiffs, purchased the surface rights in a large tract of land in Floyd county which they subdivided and sold. J. G. Vanderpool conducted a store and was the postmaster at a place near one part of this land and rendered some assistance to them in their collections for such land as had been sold. On September 29, 1920, Vanderpool purchased from them the remainder of the unsold land, consisting of about 500 acres, for the sum of $6,547.97; for this they executed and delivered to Vanderpool a title bond, reciting the consideration as being $6,547.97; "$3,547.97 in hand paid" and a deferred payment of $3,000.00, with interest from that date. It appears that Vanderpool had previously sold his storehouse to the firm of Hamilton and Newsome; that they had executed a note to him for $3,547.97, and that he assigned this note to his vendors as the first payment, though none of this appeared in the title bond. Vanderpool was placed in possession of the land and at once began negotiations for a division and sale of it. Shortly thereafter he made a sale of 300 acres to Harmon Moore for the sum of $3,250.00, reserving certain classes of timber. Moore assigned to him a note of $2,000.00 executed to him by one Dial Frasure for certain timber on another tract of land owned by Moore, and executed his promissory note to Vanderpool in the sum of $1,250.00 for the remainder of the consideration. Later Harmon Moore sold this body of land to Grover Moore for the same price. In so doing he did not assign the title bond executed by Vanderpool to him, but this was cancelled and Vanderpool executed a new title bond to Grover Moore on the 18th of October, 1920. Grover Moore paid $700.00 in cash, executed a due bill for $800.00, which was paid within a few days, and also executed two promissory notes of $875.00 each, due in one and two years, as evidence of the deferred payments. In the transaction the $1,250.00 note, executed by Harmon Moore, was cancelled, but Vanderpool sold an additional tract of this land to Harmon Moore for something in excess of the amount of the Dial Frasure note, which he retained and Harmon Moore executed to him an additional note for $260.00. Subsequently Vanderpool sold the remainder of the land to Grover Frasure and Harrison Hamilton, reserving timber of a certain size, all of these transactions being evidenced by title bonds; it also appearing in each instance that he exhibited to his vendee the title bond exe-

cuted to him, by plaintiffs. Hamilton and Newsome do not seem to have made satisfactory payments upon their note, and December 8, 1920, plaintiffs visited Vanderpool at his home. It was then agreed between them that Vanderpool should pay $1,500.00 in cash; that they would surrender to him the Hamilton-Newsome note and execute a deed to him for the land, reserving a lien for $5,113.45, all of which was done. Vanderpool procured this money from Grover Moore by discounting his deferred payments $250.00 and representing to him that it was agreed that his land should be released from all liens. With this understanding Moore borrowed the money; took up the notes and Vanderpool executed the deed. The deed from plaintiffs to Vanderpool was not recorded for several months afterward. In July, 1921, plaintiffs sued Vanderpool on the $5,113.00 note and to enforce their lien. The various purchasers were not made parties defendant but were proceeded against as garnishees and answered accordingly, stating the amount of their indebtedness to Vanderpool. Personal judgment was rendered against Vanderpool and the land ordered sold in satisfaction of the lien, and the garnishees also were directed to pay into court the amounts due by them. At the decretal sale the land was purchased by Grover Moore for the amount of the judgment. Later Grover Moore employed counsel and filed exceptions to the report of sale, and he and the other purchasers filed intervening petitions in the original action, seeking to have that judgment set aside and their rights determined. Elaborate pleadings were filed and much proof taken. On final hearing the court vacated the first judgment, gave plaintiffs a personal judgment against Vanderpool for the amount of their debt and interest, directed a sale of the timber reserved by Vanderpool and still owned by him; the proceeds of this, as well as the amount due the garnishees, to be paid on the indebtedness. He also upheld a lien on the land in favor of plaintiffs as against the purchasers, to the extent of $1,500.00. This, however, was to be diminished by the amount realized from the sale of the timber and the payments made by the garnishees. The above is the second judgment in the case; both sides excepted and prayed an appeal and it is the basis of the second above styled appeal.

After the close of the term in which the second judgment was entered plaintiffs filed a petition under

section 520 of the Code, seeking to have it vacated on the ground that as drafted and entered it did not comport with the oral opinion and order in the case as enunciated by the trial judge from the bench, it having been drafted by counsel for defendants and entered by the clerk without knowledge on the part of the court or of opposing counsel of any departure therein from the court's ruling. This was traversed and proof taken. On submission the court held that the judgment was not in conformity with his ruling, and adjudged that it should be vacated and set aside. Also a personal judgment was rendered against Vanderpool for the entire debt; the garnishees were directed to pay as in the former judgment. The unsold timber belonging to Vanderpool was subjected to the lien. It was, however, adjudged that in addition to the amounts above stated that plaintiffs had a lien on all of the lands sold for such amount, not in excess of $1,500.00, as would be necessary to make up the deficit due plaintiffs.

As the value of the standing timber and the amounts due by the garnishees are in excess of $1,500.00, but will lack more than $1,500.00 of paying the entire indebtedness the purchasers are liable on their lien notes and for $1,500.00 additional under the third judgment, whereas they are only liable for the balance due by them on their purchase money notes under the second judgment.

It is also perceived that the second judgment set aside the first judgment, but that as the third judgment set aside the second its effect is to leave the first judgment in force. The third judgment constitutes the first of the above styled appeals.

While perhaps not conclusive of all the questions involved it will simplify matters to decide first which of the two is a correct judgment. It will be observed that plaintiffs purchased and developed this tract of land as a speculative enterprise, and there is nothing in the record to indicate that they expected Vanderpool to do otherwise. When they put him in possession of the land and delivered to him a title bond reciting a paid consideration, except as to $3,000.00, this was notice that $3,000.00 was the extent of the lien retained by them. It is shown that Vanderpool exhibited this title bond to each of his respective vendees before making a sale, and that all the purchasers relied upon it. Under such circumstances the plaintiffs are clearly estopped from claiming against the purchasers a lien in excess of that

amount. The purchasers took with notice that the entire tract of land was encumbered to that extent, and in equity and good conscience their lands are not liable to plaintiffs in excess of that sum, except to the extent of what they may owe on the purchase money. When they show that plaintiffs have received that amount of the purchase money paid by them to Vanderpool they are relieved from any lien existing by virtue of the title bond should not be liable except as garnishees. It is true is admitted that the $1,500.00 in cash paid to Vanderpool on Deceber 8, 1920, was received by plaintiffs, which would reduce the lien on the entire lands to $1,500.00. It is also admitted that the amounts due by the garishees are due on the purchase of this land.

It seems to us that in the application of this fund, as well as of the funds arising from the sale of the timber on the land reserved by Vanderpool, it should go to the liquidation of the remaining $1,500.00. It is all proceeds of the sale of this land. If it liquidates the entire $1,500.00 defendants should not be liable except as garnishees. It is true this may result in a loss to plaintiffs, but if so it was caused by their negligence, and it is well settled that under such circumstances if one of two innocent persons must suffer, it must be borne by the one whose negligence produces the injury.

Again the first judgment was certainly erroneous in adjudging a sale of the lands in question without making the various purchasers in possession thereof parties defendant. In both of these particulars the second judgment was correct and the third judgment erroneous. It follows that even if the court had been authorized to set aside the second judgment as not conforming to his views the third judgment should be reversed on this appeal, and it is not necessary to discuss in detail the facts upon which the order vacating the second judgment was based. It may be said that there was considerable discussion upon the points involved and the trial judge changed his views once or twice. The decree was drawn by defendants' counsel. It was prepared in duplicate, a copy delivered to the clerk and another to plaintiff's counsel. It remained in a tray on the clerk's desk for seven or eight days before it was entered, and the evidence does not indicate any impropriety upon the part of counsel who drafted it, though there is evidence both ways as to the effect of the judge's opinion, and in the latter judgment he recites that it did not comport with

his opinion, and we may accept his views upon the matter. However, as we have decided that the second judgment was correct in form, no good purpose could be served by now requiring it to be set aside and a similar one re-entered, even if it is admitted that it was entered through mistake. We might digress to say that it is so easy to misunderstand or honestly to misconstrue an oral opinion that it is always well for a trial judge either to peruse a decree drawn by counsel or have it done by opposing counsel and then to direct its entry by a notation thereon, signed by himself.

Wherefore, the judgment is reversed on the first appeal and affirmed on the second appeal, and cause is remanded for further proceedings consistent herewith.